IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ROBERT L. BULLOCK,**            *

    **Plaintiff,**                *

v.                                *     Civil Action No. BPG-09-0112

**MICHAEL J. ASTRUE,**            *
**Commissioner of**
**Social Security,**              *

    **Defendant.**                *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff, Robert L. Bullock, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (Paper Nos. 22, 25.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies plaintiff's Motion for Summary Judgment (Paper No. 22) and grants defendant's Motion for Summary Judgment (Paper No. 25).

**I.  Background**

Plaintiff filed a claim for SSI on October 4, 2005 alleging that he became disabled on December 29, 2006 as a result of,

inter alia, a seizure disorder and back pain. (R. at 96.)[1] His application was denied initially and on reconsideration. (R. at 37-44.) On May 10, 2007, plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Judith A. Showalter. (R. at 323-70.) Also testifying was a qualified vocational expert ("VE"). (R. at 361-69.)

In a decision dated September 14, 2007, the ALJ denied plaintiff's application for benefits. (R. at 17-26.) On January 22, 2009, the Appeals Council held that there was no basis for granting review of the ALJ's decision. (R. at 5-8.) Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits she has requested. (Paper Nos. 1, 22.) In the alternative, plaintiff asks this court to remand the matter for further proceedings. (Id.)

## II. Standard of Review

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642

---

[1] Plaintiff initially alleged that his disability onset date was January 1, 1997 (R. at 77), but amended this date to December 28, 2006 at his hearing (R. at 327-29).

(4th Cir. 1966); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

The Commissioner has promulgated regulations that set forth the following five-step analysis that an ALJ must follow in determining whether a claimant is disabled:

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments ("Listings"). If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The

> Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

## III. Discussion

In her decision, ALJ Showalter found, at step one, that plaintiff is not currently engaged in substantial gainful activity. (R. at 19.) At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "degenerative disc disease of the cervical and lumbar spine, seizure disorder, and chronic obstructive pulmonary disease." (Id.) At step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings. (R. at 20.) At step four, the ALJ concluded that the claimant does not retain the RFC to perform PRW. (R. at 25.) At step five, however, the ALJ concluded that, based on plaintiff's RFC, age, education, and past work experience, plaintiff is capable of other work that exists in significant numbers in the national economy and is, therefore, not disabled. (R. at 25-26.)[2]

---

[2] In reaching this conclusion, the ALJ relied on the testimony of vocational expert Gary Young that an individual with plaintiff's RFC, age, education, and past work experience could perform jobs that exist in significant numbers in the national economy, including assembly worker or packer. (R. at 28.)

4

Prior to her step four and step five determination, the ALJ concluded that plaintiff retains the RFC to:

> Perform light work limited to jobs requiring minimal reading and writing, with no balancing, no climbing of ladders, ropes and scaffolds, no exposure to hazards, only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling, and no concentrated exposure to fumes, odors, dust, gas, or poor ventilation.

(R. at 20.)

Plaintiff's primary arguments in her lengthy memorandum in support of her Motion for Summary Judgment are that: (1) the ALJ erred in determining plaintiff's RFC with respect to his back and neck pain by (a) improperly rejecting the opinions of plaintiff's two treating physicians, and (b) improperly rejecting plaintiff's subjective complaints; and (2) the ALJ erred by failing to fully develop the record. (Paper No. 22-1.) The court addresses these arguments in detail below and, where appropriate, addresses plaintiff's remaining arguments.

### A. The ALJ's Consideration of Plaintiff's Treating Physicians' Opinions

A "treating physician's" opinion should be given controlling weight as to the nature and severity of a claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(d)(2); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (treating physician's opinion should be given significantly less weight if

5

it is inconsistent with substantial evidence).[3] If the ALJ determines that the treating physician's opinion is not entitled to controlling weight, it shall evaluate the opinion as though it would evaluate any other medical opinion. 20 C.F.R. § 416.927(d). In so doing, the ALJ shall consider factors such as: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; (4) whether the opinion is consistent with the entire record; and (5) whether the opinion is offered by a specialist. Id.

As relevant to plaintiff's appeal, the record contains medical records from: (1) plaintiff's primary care physicians Jui-Chih Hsu, M.D. and Ozden Coksaygan, M.D (e.g., R. at 120-12, 153-202, 213-15, 218-20, 265, 67, 237-39, 242-44, 251-53, 268-71); (2) pain management specialists Frank Falco, M.D. and Franklin L. Irwin, M.D. (R. at 298-304); and (3) Maryland Disability Determination Services ("DDS") consultant William Barrish, M.D. (R. at 305-17). Drs. Hsu, Coksaygan, and Barrish offered opinions regarding plaintiff's ability to work, which the ALJ considered in formulating plaintiff's RFC. (R. at 264-71, 305-17.)

---

[3]A physician is considered a "treating physician" if they "ha[ve], or ha[ve] had, an ongoing relationship with the [claimant]." 20 C.F.R. § 416.902.

Specifically, Dr. Hsu completed two Department of Social Services forms, one on April 16, 2004 and one on May 5, 2005. (R. at 264-71.) On his April 16, 2004 report, Dr. Hsu opined that, during an eight-hour workday, plaintiff could sit, stand, and walk for no more than two hours and climb, carry, bend, squat, climb, reach, and crawl for no more than one hour; plaintiff could lift or carry no more than 10 pounds; and plaintiff's medical conditions prevent him from working from April 2004 to April 2005. (R. at 268-71.) On the May 5, 2005 report, Dr. Hsu opined that, during an eight-hour workday, plaintiff could never climb, carry, bend, squat, climb, reach, or crawl, and could sit, stand, and walk for only one hour; plaintiff could lift or carry no more than 10 pounds; and that plaintiff's medical conditions prevent him from working from April 2005 to April 2006. (R. at 264-67.) Similarly, in an October 2, 2006 letter to "whom it may concern," Dr. Coksaygan opined that plaintiff is "completely, totally, permanently disabled" due to, <u>inter alia</u>, "displacement of cervical intervertebral disc," "displacement of lumbar intervertebral disc," and "neck sprain and strain." (R. at 295.)

Maryland DDS consulting physician William Barrish, M.D completed a report after examining plaintiff on June 5, 2007. (R. at 305-17.) According to Dr. Barrish, plaintiff initially exhibited significant restrictions in range of motion of his

7

cervical and lumbar spine. (R. at 307.) Upon distraction, however, plaintiff's range of motion was significantly better and without pain. (Id.) This, according to Dr. Barrish, indicates that plaintiff magnified his symptoms during his examination. (Id.) Based on this observation, as well as his review of MRI and EMG studies indicating moderate disc herniation and bilateral cervical and lumbosacral radiculopathy,[4] Dr. Barish opined that plaintiff could continuously lift up to 10 pounds, frequently lift up to 20 pounds, and occasionally lift up to 50 pounds. (R. at 311.) He further opined that, during an eight-hour workday, plaintiff could sit for eight hours, and stand and walk for six hours each. (R. at 312.)

In determining plaintiff's RFC, the ALJ concluded that Dr. Hsu's and Dr. Coksaygan's opinions that plaintiff is disabled and unable to work are entitled to little weight while Dr. Barrish's opinion is entitled to "greater weight." (R. at 23.) Plaintiff argues that the ALJ erred in reaching this conclusion. (Paper No. 22-1 at 29-42.) Plaintiff's primary argument in this respect is that the ALJ failed to properly analyze his treating physician's pursuant to 20 C.F.R. 416.927(d)(2). (Id.) Specifically, according to plaintiff, Dr. Hsu's and Dr. Coksaygan's opinions should have been given "controlling weight"

---

[4] Radiculopathy is a "disease of cervical nerve roots," which often manifests as neck or shoulder pain. Dorlands Medical Dictionary 1595 (31st ed. 2007).

8

because they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the record." (Id. at 38 (quoting 20 C.F.R. § 416.927(d)(2)).) Further, according to plaintiff, even if Drs. Hsu's and Coksaygan's opinions should not have been given "controlling weight," the ALJ's conclusion that they were entitled to little weight was improper because the ALJ failed to analyze these opinions pursuant to the factors set forth in 20 C.F.R. § 416.927(d). (Id. at 41-42.)

Contrary to plaintiff's assertion, the ALJ properly analyzed plaintiff's physicians' opinions pursuant to 20 C.F.R. § 416.927(d). With respect to Dr. Hsu, the ALJ concluded that his opinion that, from April 2004 to April 2006, plaintiff could not work is entitled to little weight because it is "not supported by the minimal finding in Dr. Hsu's records," and, since plaintiff's alleged onset date was December 29, 2006, it "do[es] not address the time period at issue." (R. at 23.)

This conclusion is consistent with 20 C.F.R. § 416.927(d) and supported by substantial weight. Dr. Hsu's medical records contain extensive notes of plaintiff's complaints of back and neck pain. As the ALJ explained, however, these records contain minimal, if any, findings regarding plaintiff's back and neck. (R. at 22-23.) In particular, as the ALJ noted, "Dr. Hsu did not note any limitations or work restrictions in [plaintiff's]

9

treatment records." (R. at 23.) In addition, Dr. Hsu's treatment notes indicate that, in April 2005, plaintiff presented with complaints of neck and back pain, but, upon examination, Dr. Hsu observed "no muscle or joint pain, weakness, swelling, or inflammation, no restriction of motion, no atrophy, and no backache." (R. at 22 (citing R. at 237).) Thus, while some of the factors set forth in 20 C.F.R. § 416.927(d) may weigh in favor of giving Dr. Hsu's opinion more weight (e.g., Dr. Hsu had a lengthy treatment relationship with plaintiff and saw him with some frequency), the ALJ properly concluded that one factor weighs heavily against giving his opinion significant weight, i.e., that Dr. Hsu's opinion is not supported by his own findings, or the "relevant evidence."[5]

---

[5] As noted, the ALJ also discounted Dr. Hsu's opinion on the ground that it "do[es] not address the time period at issue." (R. at 23.) It is improper for an ALJ to "exclude consideration of medical records dated prior to [a claimant's] alleged onset date." Vandenboom v. Barnhart, 421 F.3d 754, 750 (8th Cir. 2005); see also Woodhouse v. Astrue, 696 F. Supp. 2d 521, 535 n.14 (D. Md. 2010) (evidence of disability prior to onset date is "relevant and information the ALJ must consider"); 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record . . . ."). In the instant case, however, it is clear that the ALJ considered this evidence, but deemed it less relevant than other evidence in the record since it addressed the time period before plaintiff's alleged onset date. The ALJ, therefore, did not err in this respect. Cf. Williams-Overstreet v. Astrue, 364 Fed. App'x 271, 274 (7th Cir. 2010) (ALJ did not err in limiting evidence created before claimed onset date to purpose of providing foundation for consideration of claimant's current disability status).

In addition, as plaintiff points out, the ALJ did not discuss MRI reports of plaintiff's spine ordered by Dr. Hsu that

The ALJ similarly discounted Dr. Coksaygan's opinion because, according to the ALJ, it is "conclusory" and inconsistent with other substantial evidence of record. (R. at 23-24.) This conclusion is also consistent with 20 C.F.R. § 416.927(d) and supported by substantial evidence. First, as the ALJ explained, Dr. Coksaygan's "one page report does not refer to any objective testing, EMG, MRI, x-rays, etc., nor does it provide any explanation for the conclusion that [plaintiff] is 'completely, totally, and permanently disabled.'" (R. at 23 (citing R. at 295).)

Second, the ALJ provided an extensive explanation of how Dr. Coksaygan's opinion conflicts with the medical reports of Drs. Hsu, Falco, and Irwin. (R. at 23-25.) Specifically, the ALJ explained that, in Dr. Hsu's last documented examination of plaintiff before Dr. Coksaygan issued his opinion, Dr. Hsu did

---

are in the record in determining how much weight to give Dr. Hsu's opinion even though, according to plaintiff, these reports support Dr. Hsu's opinion that plaintiff cannot work. (Paper No. 22-1 at 39 (citing R. at 241, 275, 277, 279).) Dr. Hsu, however, did not reference these MRI reports on the April 2004 or May 2005 forms in which he opined that plaintiff cannot work. (R. at 264-71.) Further, the minimal explanation of these reports contained in Dr. Hsu's records provides limited, if any, insight into whether they reveal back impairments significant enough to prevent plaintiff from working. (See R. at 242 (There is a "[p]resence of a diffuse disc herniation at the L4-L5 level causing a small amount of spinal stenosis [abnormal narrowing] and bilateral foraminal narrowing at this level[.] There is a small size3 central disc herniation the L4-L5 level. The remainder of the examination is unremarkable.").) Accordingly, the ALJ did not err in failing to discuss these MRI reports in this part of his opinion.

not make any findings with respect to plaintiff's complaints of back pain that would support a conclusion that plaintiff is disabled. (R. at 23 (citing R. at 212).) The ALJ also explained that Drs. Falco and Irwin observed that plaintiff had "no tenderness in his sacroiliac joint, and straight leg raising was negative," and that plaintiff's "gait was coordinated and smooth." (R. at 24 (citing R. at 298-304).) Further, according to the ALJ, there is no indication in Drs. Falco's or Irwin's reports that plaintiff was advised to limit or restrict his activities. (Id.)

Finally, the ALJ explained that Dr. Coksaygan's opinion is inconsistent with Dr. Barrish's opinion that plaintiff can lift up to 50 pounds occasionally and 20 pounds frequently, that he can sit for eight hours a day, and that he can stand or walk six hours a day. (R. at 24 (citing R. at 305-16).) As the ALJ explained, Dr. Barrish expressly based his conclusion on his review of plaintiff's MRIs and EMGs, along with his observation that plaintiff exhibited "symptom magnification" during his examination. (Id.) Considering that Dr. Barrish explained his opinion, and that, as the ALJ explained, his opinion is consistent with the lack of clinical findings and documented symptoms of plaintiff's back pain in the record, the ALJ's conclusion that Dr. Barrish's opinion is entitled to greater weight than Dr. Hsu's and Dr. Coksaygan's opinions is consistent

12

with 20 C.F.R. § 416.927(d) and supported by substantial evidence. Accordingly, the court concludes that the ALJ did not err in this part of her opinion.

### B. The ALJ's Credibility Analysis

The evaluation of a claimant's credibility as it relates to their subjective complaints of pain or other symptoms caused by their impairments is a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. Id. Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony.[6] Id. at 595.

In addition, the ALJ must specifically refer to evidence informing his conclusion, including the reasons for rejecting evidence which contradicts his findings. See, e.g., Gordan v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (remanding because

---

[6] Step two of the credibility analysis involves consideration of the claimant's statements of pain and other alleged symptoms as well as factors such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments and other measures taken for relief; and (6) other factors concerning functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

13

the ALJ failed to adequately explain basis of findings). An explanation is particularly critical when evaluating subjective symptoms. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

Plaintiff testified at his hearing that he has constant pain in his back and neck that limit him to walking for no more than 10 to 15 minutes without resting, standing only a few minutes before having to sit down at a time, and sitting for no more than 10 to 15 minutes. (R. at 351-53.) He further testified that his doctor limits him to lifting no more than five to ten pounds, and that bending, kneeling, and stooping cause him pain. (Id.) In analyzing plaintiff's credibility, the ALJ concluding that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 22.) Plaintiff argues that, in reaching this conclusion, the ALJ failed to properly evaluate his subjective complaints. (Paper No. 22-1 at 42-52.)

The ALJ, however, properly evaluated plaintiff's subjective complaints. The ALJ concluded that plaintiff's subjective complaints were not "entirely credible" on the ground that, while "objective findings confirm[] degenerative disc disease[7] and

---

[7] Plaintiff argues that the ALJ improperly downplayed plaintiff's "herniated discs" by mischaracterizing it as "degenerative disc disease." (Paper No. 22-1 at 51.) The ALJ's

14

radiculopathy, the evidence does not document clinical findings, or even subjective complaints, to substantiate [plaintiff's] inability to work." (R. at 22.) Further, according to the ALJ, "there is very little in the way of any treatment for the claimant's impairment with no evaluation by specialists." (Id.)

As discussed in Part III.A above, there are limited, if any, clinical findings in the record from any of plaintiff's physicians that substantiate plaintiff's complaints of debilitating back and neck pain. Again, while Drs. Hsu and Coksaygan opined that plaintiff could not work, their reports provide no explanation for their opinions and their own treatment notes do not substantiate their opinions. Thus, this basis for determining that plaintiff's subjective complaints are not entirely credible is supported by substantial evidence.

The court notes that the ALJ's statement that there is no record of "evaluation by specialists" in the record is not accurate. (See R. at 298-304 (records from specialists Drs. Falco and Irwin).) The ALJ, however, subsequently explained in her opinion that these specialists' records contain observations

---

use of the term "degenerative disc disease" instead of "herniated discs," however, is immaterial in light of the fact that the ALJ recognized that plaintiff suffers from disc herniations in another portion of his opinion. (R. at 19.) In any event, the ALJ's erroneous reference has no impact on the ALJ's ultimate conclusion that there is limited, if any, medical evidence to support plaintiff's subjective complaints of debilitating back and neck pain.

that undermine plaintiff's subjective complaints. (See R. at 24 (Drs. Falco and Irwin observed that plaintiff had "no tenderness in his sacroiliac joint, and straight leg raising was negative," that plaintiff's "gait was coordinated and smooth," and there is no indication in their reports that plaintiff was advised to limit or restrict his activities).) Similarly, while the ALJ's statement that there are no subjective complaints in the record is not accurate (e.g., R. at 210, 218, 242), the fact that the record contains subjective complaints does not undermine the ALJ's conclusion that these complaints are not entirely credible since, as the ALJ explained in detail, there is limited, if any, medical evidence to substantiate plaintiff's complaints of debilitating back pain. Accordingly, the ALJ's conclusion that plaintiff's subjective complaints are not entirely credible is supported by substantial evidence.[8]

---

[8] Plaintiff argues that his "most significant and disabling impairments are his severe cervical and lumbar spine disorders" (Paper No. 22-1 at 69), and, accordingly, focuses most of his appeal on the ALJ's consideration of these impairments. Plaintiff, however, also argues that the ALJ erred in considering plaintiff's subjective complaints of, inter alia, his fatigue; seizure disorder; and a respiratory impairment, chronic obstructive pulmonary disease ("COPD"). (Id. at 42-52.) These arguments are also without merit where, as the ALJ explained, there are no treatment notes in the record indicating that plaintiff complained of fatigue, no medical records that plaintiff suffered from three to four seizures a month as plaintiff alleged, and plaintiff testified at his hearing that he continues to smoke despite having been advised to quit because of his COPD. (R. at 22.)

## C.  **The ALJ's Failure to Obtain Additional Evidence**

Finally, plaintiff argues that the ALJ erred by failing to fully develop the record. (Paper No. 22-1 at 66-68.) Specifically, plaintiff argues that the ALJ failed to obtain additional medical evidence from Dr. Hsu, and two other physicians who treated plaintiff, Pamela LeClaire, M.D., a primary care physician, and Magdy Boulous, M.D., a neurosurgeon who examined plaintiff in April 2006. (Id.) According to plaintiff, "[i]t was or should have been obvious to the ALJ that there were relevant medical records in existence that were not in the record at the tome [sic] that she made her decision," and since "[t]he ALJ made no effort to obtain these records, . . . [she] failed to fully develop the record." (Id. at 68.)

The claimant bears the burden for proving her disability. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986); 42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912(a). The ALJ has a corresponding duty to develop a complete medical record. Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir. 1986). When the evidence provided by a medical source is inadequate to make a disability determination and "contains a conflict or ambiguity that must be resolved," the

---

Plaintiff also argues that the ALJ's hypothetical to the VE was erroneous because the ALJ failed to properly consider all of plaintiff's impairments and limiting conditions. (Paper No. 22-1 at 60-66.) This argument, however, is predicated on plaintiff's contention that the ALJ erred in determining plaintiff's RFC, and is, therefore, identical to the arguments discussed in Parts III.A and III.B above.

17

ALJ may recontact the medical source for clarification. 20 C.F.R. § 416.912(e)(1). If a claimant has not provided sufficient evidence to support a decision, the ALJ may order a consultative examination. 20 C.F.R. § 416.919a.

An ALJ's opinion is subject to remand if it is based upon a record containing "'evidentiary gaps that result in unfairness or clear prejudice.'" Fleming v. Barnhart, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (quoting Brown v. Shalala, 44 F.3d 931, 935-36 (11th Cir. 1995)). At the same time, the medical evidence or record need only be complete enough to make a determination regarding the nature, effects, and duration of a claimant's disability, and the claimant's RFC. 20 C.F.R. § 416.913(e); see also Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993) ("The difficulty is that no record is 'complete' – one may always obtain another medical examination, seek the view of one more consultant . . . and so on."). Thus, on review, a district court considers not whether the medical record before the ALJ was exhaustive, but whether the record was complete enough to allow the ALJ to make all necessary determinations based upon substantial evidence, and whether any gaps in the record led to unfairness or prejudice for the claimant. See Fleming, 284 F. Supp. 2d at 272; 20 C.F.R. § 416.913(e).

The record contains approximately 165 pages of medical records from at least five physicians, which cover approximately

three years of plaintiff's medical history. As discussed in Parts III.A and III.B above, this evidence was complete enough to allow the ALJ to make determinations based upon substantial evidence with respect to plaintiff's RFC. Plaintiff does not argue that it was not complete enough for the ALJ determine the nature, effects, and duration of plaintiff's disability. Indeed, plaintiff fails to specifically explain how the absence of records from Drs. Hsu, LeClaire, or Boulous would "result in [any] unfairness or clear prejudice" to him. Accordingly, the ALJ did not err by not seeking additional medical evidence from plaintiff's physicians.[9]

## IV. Conclusion

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (Paper No. 22), and grants defendant's Motion for Summary Judgment (Paper No. 25). A separate Order shall issue.

Date: 08-03-10                          /s/
                                        Beth P. Gesner
                                        United States Magistrate Judge

---

[9] Further, at plaintiff's hearing, the ALJ asked plaintiff's counsel whether she planned to submit additional evidence. (R. at 325-26.) Plaintiff's counsel responded that the only evidence she may seek is an RFC assessment from Dr. LeClaire and that she would obtain that evidence herself. (Id.) Plaintiff's counsel, however, did not submit an RFC assessment from Dr. LeClaire.